UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARBARA BURKE,

    Plaintiff,

v.                                                         Case No. 8:08–cv–2072–T–24–TGW

LABORATORY CORPORATION
OF AMERICA,

    Defendant.
_____/

## **ORDER**

The Court now considers cross motions for summary judgment filed by Plaintiff Barbara Burke (Doc. 32) and Defendant Laboratory Corporation of America ("Lab Corp") (Doc. 35). Both motions were opposed. (Docs. 40, 41.)

Burke filed a three-count complaint in U.S. District Court against her former employer, Lab Corp., alleging that the company fired her in violation of the Age Discrimination in Employment Act, the Florida Civil Rights Act, and the Family and Medical Leave Act ("FMLA").

For the reasons explained in this order, the Court finds that a genuine issue of material fact remains on all three claims.

## **BACKGROUND**

Barbara Burke began work for Lab Corp. in 2001 as an administrative specialist in the company's Tampa office. At the time, she was 51 years old. (Burke Dep. at 31.) She had a high school degree and had worked for about 10 years as an office manager and secretary.

1

In her position, Burke typed letters, answered phones, copied and filed documents, downloaded and printed reports for managers, entered sales data into spreadsheets, made travel arrangements for the vice president of sales, processed expense reports, coded sales invoices, used database programs such as Access and Excel, managed payroll entries, processed hospital reports, fielded an occasional customer complaint, and helped out co-workers in the sales department as needed. (Burke Dep. at 31-47, 65-80.) She was good at her job. Her supervisors rated her work as great or outstanding. (Doc. 32 ¶ 5.)

In the fall of 2007, Burke learned that she needed surgery on her Achilles tendon. (Doc. 32 ¶ 6.) She applied for and obtained a 12-week leave from work under Lab Corp.'s family and medical leave policy. (Doc. 32, Ex. 4.) No one at Lab Corp. attempted to prevent her from taking the leave. (Burke Dep. at 51.)

While Burke was recovering from her surgery, Lab Corp. decided it needed to trim approximately $1.1-million from its budget. (Sumsion Decl. ¶ 7). To do this, Lab Corp. cut its travel, entertainment and other administrative expenses, and eliminated 55 jobs throughout Florida. Lab Corp. managers, including vice president of sales Terry Farrell, said they picked the positions to be eliminated by determining what money needed to be saved and by deciding what job duties could be absorbed by existing employees. (Farrell Dep. at 20-21.) In the Tampa office, Lab Corp. decided to eliminate only one position—the post held for seven years by Burke. (Doc. 35 at 3.) Farrell apparently made the decision to eliminate the job on his own after Lab Corp. completed its workforce reduction. (Sumsion Decl. ¶ 10.)

While Lab Corp. terminated Burke, who was then 56, it retained Wanda Bellestri, 57, the second administrative specialist in the office. Lab Corp. said it kept Bellestri, a 21-year veteran,

because she had worked at Lab Corp. longer than Burke had. (Doc. 35 at 3. Sumsion Decl. ¶ 11.)

Managers who met to discuss the cuts knew that Burke was on medical leave. (Farrell Dep. at 21.) Because Burke was still recovering from surgery, managers decided to wait for Burke to return before eliminating her job. *Id.* Company policy required managers to wait for Burke to return before they fired her in order to prevent employees on leave from losing both their job and their medical benefits at the same time. (Sumsion Decl. ¶ 12.)

While eliminating Burke's job, Lab Corp. also created a new administrative specialist position in the Tampa office's sales department. On the same day that Lab Corp. executives drafted Burke's separation agreement (Doc. 32, Ex. E), Farrell, the vice president of sales, approved the new slot for an administrative specialist. (Doc. 32, Ex. G.) On February 4, 2008, while Burke was still recuperating at home, Lab Corp. posted the new administrative specialist position in the Tampa office's sales department. (Sumsion Decl. ¶ 14.) The parties dispute whether the new administrative specialist position was substantially similar to Burke's job.

Burke returned to work at the conclusion of her leave on February 11, 2008. She arrived at the office at 8 a.m. Three minutes later, Farrell called her into his office. He told Burke that her job had been eliminated. (Burke Decl. ¶ 18.) As she was packing up her belongings, Burke asked Kate Sumsion, the division's human resources director, whether she could move into any available positions. Sumsion told her that Lab Corp. had no administrative specialist jobs open. (Burke Decl. ¶ 18.)

In fact, Lab Corp. had already posted the new administrative specialist job.[1] A day later, the company posted another administrative assistant job in the Tampa distribution department. Three days after that, a third job, a project specialist position in the Tampa compliance department, became available.[2]

Even though Sumsion told Burke no other jobs were available, Burke saw the posting on Lab Corp.'s website for the new administrative specialist position. Burke e-mailed Sumsion, and Sumsion told Burke she had to apply for the position just as any other person would need to apply. (Doc. 41, Ex.2.)

Burke applied for the administrative specialist job, but Lab Corp. did not grant her an interview. The company hired Suzanne Ogden, age 34, who had worked as an internal account specialist in Lab Corp.'s Nashville office.

About six months later, Burke filed suit alleging age discrimination and a violation of the FMLA.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant—in

---

[1] Sumsion, the human resource director, later explained that she failed to mention the administrative specialist position to Burke because she did not know about the position. (Doc. 41, Ex. 2.) A reasonable jury could choose to disregard this explanation since an e-mail shows that Sumsion sought approval for the new position two weeks earlier. (Doc. 41, Ex. 3.)

[2] Burke did not apply for these two positions, but she did apply for the newly-created administrative specialist job once she learned about it.

this case, Burke—and resolve all reasonable doubts in that party's favor. Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue of material fact for trial. Id. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. "The mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." Id. at 252.

## ANALYSIS

**I.** *Genuine Issue of Material Fact Remains on Burke's Age Discrimination Claim*

The Florida Civil Rights Act and the federal Age Discrimination in Employment Act ("ADEA") prohibit discrimination based on age, national origin, religion, and other

characteristics.[3]  Fla. Stat. § 760.01; 29 U.S.C. § 623.  Under the ADEA, Burke "must prove, by a preponderance of evidence, that age was a 'but-for' cause of the challenged adverse employment action."  Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343, 2352 (2009).  A plaintiff can offer direct evidence of discrimination—however, Burke offers none. Or a plaintiff may prove a case under the ADEA using circumstantial evidence under the burden-shifting test in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Mitchell v. Worldwide Underwriters Inc. Co., 967 F.2d 565, 566 (11th Cir. 1992).

## A.  Burke can establish a prima facie case

In the first part of the McDonnell Douglas burden-shifting test, the plaintiff must set out a prima facie case of discrimination.  Where an employer has eliminated the employee's job as part of a reduction-in-force, as in this case, the employee must show (1) that she was in a protected age group and was adversely affected by an employment decision, (2) she was qualified for her current position or to assume another position at the time of her discharge, and (3) must present evidence by which a fact finder might reasonably conclude the employer intended to discriminate on the basis of age in reaching the decision to fire her. Earley v. Champion Int'l. Corp., 907 F.2d 1077, 1082 (11th Cir. 1990).

The McDonnell Douglas burden-shifting test "was never intended to be rigid, mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978).  "Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience. . . ."

---

[3] Burke's claim under the Florida Civil Rights Act mirrors her claim under the federal Age Discrimination in Employment Act.  Since Florida law mimics the federal law, and federal case law that controls the ADEA also applies to the Florida Civil Rights Act, the Court considers these two claims together. See City of Hollywood v. Hogan, 986 So. 2d 634, 641 (Fla. 4th DCA 2008); Florida State University v. Sondel, 685 So. 2d 923, 925 n.1 (Fla. 1st DCA 1996).

Id. At the first stage, a plaintiff must merely offer evidence of acts that raise an inference of discrimination in order to establish a prima facie case. Id.

Burke satisfies the first two criteria of the prima facie case. She was 56 years old when terminated, well within the protected age group of forty or older. 29 U.S.C. § 631(a). She suffered an adverse action when terminated.[4] She was qualified for her job; in fact, her supervisor said she did a good job. (Farrell Dep. at 9.) A reasonable jury could also find she was qualified for the administrative specialist job she sought after being terminated. Although Lab Corp. officials testified that they wanted to hire someone with extensive sales and accounting experience, the listed job requirements only call for someone with a high school diploma and five to seven years of experience, which Burke had.[5] A jury could choose to believe that the posted job requirements were, in fact, the job requirements—and could disregard testimony that Lab Corp. actually wanted someone with more experience. Viewing the facts in the light most favorable to Burke, the Court finds that a jury could reasonably find her qualified for this administrative specialist job.

Burke did not file a motion for summary judgment on her age discrimination claim; however, the Court identified from Burke's Response to Lab. Corp's Summary Judgment Motion what evidence she relied on to prove the third element of her prima facie case, Lab Corp.'s intent to discriminate. The Court examined the evidence even though it is under no obligation to

---

[4] See Summers v. Winter, 303 Fed. Appx. 716, 718 (11th Cir. 2008) ("An adverse employment action is 'a serious and material change in the terms, conditions, or privileges of employment.'").

[5] Because of conflicting evidence in the record, a genuine issue of material fact exists about what type of job skills Lab Corp. sought for the post and what type of customer service experience Burke had.

"plumb the record in order to find a genuine issue of material fact." Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996).

Burke's evidence of discrimination, while thin, is barely sufficient to create a genuine issue of material fact. The Court draws this conclusion only when it views the evidence in the light most favorable to Burke and draws every reasonable inference in Burke's favor, as it is required to do. A jury, however, is under no such obligation.

First, Burke offers evidence that at age 56 she was purportedly fired in a reduction in force in which Lab Corp. eliminated only one administrative specialist position in her office, while simultaneously creating a new administrative specialist position. The mere juxtaposition of events—downsizing one administrative specialist position to cut costs while simultaneously creating a new administrative specialist position with similar duties—raises an inference that Lab Corp. did not terminate Burke for its purported reason, to cut costs. In addition, Sumsion's statement to Burke that no other jobs were available—which was false and which Sumsion should have known to be false—also raises an inference the Lab Corp. sought to push Burke out of the company for reasons unrelated to downsizing. In addition, Lab Corp. hired a 34-year-old woman, Suzanne Ogborn, to fill the new post, but failed to even grant Burke an interview. The parties dispute whether Ogborn was more or less qualified than Burke for the job. The hiring of a younger woman in a similar position subsequent to firing a 56-year-old employee in a protected class also raises an inference of age discrimination.[6]

In addition, Burke presents evidence that Terry Farrell, vice president of sales, instructed

---

[6] On the other hand, it is significant that Lab Corp. retained Wanda Bellestri, 57, in the second administrative specialist position in the Tampa office. However, this fact is not sufficient to grant Lab Corp. summary judgment.

8

other managers to hire "good looking" and "young" female talent. Former Lab Corp. Manager of Business Development Jacobo Sznapstajler testified that Farrell told him: "You need to hire young talent" and also praised him for hiring good-looking women. (Sznapstajler Dep. at 47-48.) Sznapstajler also testified that Farrell said he preferred that Sznapstajler not hire anyone close to retirement age. (Sznapstajler Dep. at 47-48.)[7]

While Farrell did not make these remarks specifically about Burke, a jury could reasonably find that the comments showed Farrell's intent in making hiring and firing decisions, and could prove discriminatory intent. When viewing the evidence in the light most favorable to Burke, there is also a reasonable nexus between Farrell's comments and the decision to terminate Burke based on the timing and circumstances of Farrell's comments. Rojas v. Florida, 285 F.3d 1339, 1343 (11th Cir. 2002) (holding that "potentially discriminatory comments that were not directly related to the employment decision could contribute to a circumstantial showing of discriminatory intent"). Significantly, Farrell allegedly made the comments in June 2007 in the midst of Lab Corp.'s cost-cutting and decisions to trim staff. (Sumsion Decl. ¶ 7.) In July, the Florida division began reducing its travel, entertainment, phone, printing, and administrative costs. Id. Also, during the same quarter, Lab Corp. faced the economic problems that it said led it to later reduce its staff. Lab Corp. argues that the comments in the summer of 2007 cannot be connected to Burke's firing because she was not terminated until February 2008, eight months later. However, Lab Corp. acknowledges that it made the decision to eliminate her job well

---

[7] Lab Corp. argues that Farrell's comments about "good talent" only referred to the physical attractiveness—not the age—of prospective employees. However, Sznapstajler testified that Farrell referred to both looks and age, and that Sznapstajler interpreted the "good talent" remarks to refer both to looks and age. In any event, determinations about a witness's arguably inconsistent statements are questions of credibility that should be left to a jury.

before she returned to work. In fact, the discussion on cost cutting apparently began in July 2007 around the same time as Farrell's comments and continued through the remaining of the year. Thus, Farrell's comments about hiring "young talent" are not so remote and attenuated to the employment decisions at issue in this case to be considered stray remarks.[8]

**B.     Lab Corp. can identify a nondiscriminatory basis for its decision**

Once Burke establishes a prima facie case under McDonnell Douglas, Lab Corp. must then identify a nondiscriminatory basis for its decision to terminate her.[9] Lab Corp. has easily met this burden by offering testimony that it eliminated 55 jobs throughout Florida to reduce its budget by $1.1-million. It also explains that it chose to eliminate Burke—while retaining another 57-year-old administrative specialist—because her job could be absorbed by other employees.

**C.     A genuine issue of material fact exists regarding pretext**

Once an employer identifies a legitimate, nondiscriminatory reason for Burke's termination, Burke must present evidence that the legitimate reason is merely a pretext for a discriminatory reason behind her firing. The evidence of Farrell's discriminatory remarks,

---

[8] The record does not identify exactly when Lab Corp. began discussing its layoffs, exactly when and how many times managers met to discuss the cuts, and exactly when they made final decisions. Moreover, Farrell's role in the decisions is not entirely clear. While as a vice president of sales, Farrell participated in meetings of the "Florida leadership team" to discuss the cuts, it is not clear if the committee as a group made the decisions, or whether Farrell had ultimate, or partial, say over the decisions. In her declaration, Sumsion stated that Farrell made the decision to eliminate Burke's job on his own *after* Lab Corp. completed its workforce reduction. (Sumsion Decl. ¶ 10.)

[9] Only the burden of producing evidence of a legitimate, nondiscriminatory reason shifts to the employer. The burden of persuasion remains at all times with the Plaintiff. Reeves v. Sanderson Plumbing Prods.,Inc., 530 U.S. 133, 142 (2000).

which establishes the third element of Burke's prima facie case, can for the same reasons support a finding of pretext, where the Court views the facts in the light most favorable to Burke and draws every inference in her favor. Reeves, 530 U.S. at 143.

For these reasons, the Court denies Lab Corp.'s motion for summary judgment on Burke's claims of age discrimination under the Age Discrimination in Employment Act and the Florida Civil Rights Act.

## II. *Genuine Issue of Material Fact Remains on FMLA Claim*

**A.      Burke can Challenge the Legitimacy of Lab Corp.'s Downsizing**

In general, the Family Medical and Leave Act guarantees that an employee who takes a leave of absence for medical reasons will get her job back—or get an equivalent job—when she returns to work. 28 U.S.C. § 2614(a). Under the FMLA, an employee can sue an employer that interferes with her right to be reinstated to her job, or an equivalent one. 29 U.S.C. § 2617(a)(1)-(2). To establish that an employer has interfered with the employee's right to reinstatement, the employer's motive for refusing to reinstate the employee is irrelevant. Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) (internal citations omitted).

The FMLA, however, does not require an employer to reinstate an employee in every circumstance. The right to reinstatement "is not absolute; an employer can deny reinstatement 'if it can demonstrate that it would have discharged the employee had he not been on FMLA leave.'" Martin v. Brevard County Pub. Schs., 543 F.3d 1261, 1267 (11th Cir. 2008) (quoting Strickland v. Water Works & Sewer Bd. of Birmingham, 239 F.3d 1199, 1208 (11th Cir. 2001)). If the employer does not reinstate the employee, "the employer bears the burden of proving that the employee would have been laid off during the FMLA period for reasons unrelated to the

11

employee's condition, and therefore is not entitled to restoration." Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 n.1 (11th Cir. 2000); see also 29 C.F.R. § 825.216(a).

Lab Corp. argues that the FMLA's protections do not apply to Burke because she was, in fact, reinstated to her job for one day—on the day she was fired approximately three minutes after arriving at work.[10] While the FMLA does not require an employer to keep an employee indefinitely after she returns from medical leave, the law's protections extend beyond reinstating a person to a job for three minutes. Returning to a position only long enough to be fired does not amount to a meaningful reinstatement under the statute. See Ostermyer v. Toledo Clinic, Inc., No. 3:03-cv-7736, 2005 WL 927120, at *5 (N.D. Ohio Apr. 18, 2005) (finding that an employee was not reinstated to her position under the FMLA when she was fired two weeks after returning from leave).

Lab Corp. agrees that Burke suffered an adverse employment action when Lab Corp. fired her. Parris, 216 F.3d at 1301. However, the parties disagree whether Lab Corp. fired Burke as part of a legitimate reduction in force. Burke, of course, contends that her termination as part of the downsizing was illegitimate and based on age discrimination.[11] The Court's analysis of Burke's claim that her firing was illegitimate mirrors its analysis of her age discrimination claim. For many of the same reasons, the Court reaches the same result. Because at summary judgment "the employee must raise only a material issue of fact, which he may

---

[10] Although Burke left the premises after packing up her belongings and only remained "at work" for a short time, Lab Corp. argues the Court should consider this a full day's work since Lab Corp. paid Burke the full day's salary.

[11] Burke does not need to show that the downsizing of 55 jobs as applied to the entire Florida division was illegitimate. She only needs to show that the decision to terminate her was illegitimate.

generate through reasonable inferences," the Court cannot enter summary judgment for Lab Corp. based on this point. Parris, 216 F.3d at 1301. On the other hand, Burke has not presented sufficient evidence to obtain summary judgment in her favor either.

**B.     Reinstatement to an Equivalent Position**

If a jury finds that Burke was entitled to reinstatement, then Burke must show that Lab Corp. interfered with her right by failing to return her to her job or to an equivalent position. Burke asserts that Lab Corp. should have placed her in the administrative assistant position created at the time of her dismissal. The law requires the employer to place the returning employee into her old job or into "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). An equivalent position must be "virtually identical" to the employee's old job "in terms of pay, benefits, and working conditions, including privileges, perquisites, and status." 29 C.F.R. § 825.215(a). "It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." Id.

Two jobs can be equivalent without being identical. For the jobs to be distinguishable, the differences between the positions must be meaningful. Courts often consider whether the jobs involve the same level of sophistication, require the same education and training, pay the same amount, and carry the same status. See 29 C.F.R. § 825.215(e) A mere difference does not make a distinction. See 29 C.F.R. § 825.215(a) ("The requirement that an employee be restored to the same or equivalent job . . . does not extend to de minimis, intangible, or unmeasurable aspects of the job.") Thus, two jobs might be equivalent even though one required an employee to work at night and the other required an employee to work during the day. McBurney v. Stew

13

Hansen's Dodge City, 311 F. Supp. 2d 811 (S.D. Iowa 2004).

Burke argues that she should have been reinstated to one of three jobs that were equivalent to her old position.

*1. New Administrative Specialist Position (Job Code 82299)*

First, Burke argues that the newly-created administrative specialist position—job code 82299—was equivalent to her old position. The new position is not identical, but they share several similarities.

For one, the two jobs shared the same title. Both were "administrative specialist" positions. Lab Corp. discounts this similarity by asserting that the "administrative specialist" title was such a broad category that it encompassed widely disparate jobs with little in common. (Sumsion Decl. ¶ 2.) Lab Corp. Human Resource Division Director Kate Sumsion stated that the "categories provide no information about the specific responsibilities of a position." The Court cannot place much weight on Sumsion's conclusory statement, and it recognizes that a jury could reasonably choose not to believe Sumsion's testimony. On its face, the assertion that a job title contains no information about a person's job makes little sense. A jury could reasonably believe that the two jobs shared the same title because they were, in fact, similar.

Second, both positions only required high school equivalency degrees. Although the job description stated that Lab Corp. preferred a candidate for the new job with an associate's degree, it did not hire an applicant with an associate's degree.[12] Lab Corp. also sought an

---

[12] The applicant hired for the new position, Suzanne Ogborn, had a certification from the Tennessee Technology Center in Nashville. (Doc. 41-7 at 3.) A certification is not a degree, and it is not clear if a "certification" is somehow equivalent. Burke was three credits short of obtaining an associate's degree in business administration from Sullivan County Community College in South Fallsburg, New York. (Doc. 41-13 at 2.) Both Ogborn and Burke graduated

employee with five to seven years of work experience (Doc. 32-10) for the new position. Both Burke and Suzanne Ogborn, whom Lab Corp. ultimately hired, met this job requirement. Because both positions required the same educational background and, apparently, similar years of work experience, a jury could conclude that the positions required substantially similar skills, education, effort, and authority.

In addition, both jobs reported to officials in Lab Corp.'s sales department. Although Burke's old position reported to the vice president of sales, Ogborn reported to a different Lab Corp. executive. But both supervisors worked under the sales department. Lab Corp. emphasizes this difference, but it does not explain the significance of reporting to different managers in the same department. The Court cannot determine if this difference is meaningful, or simply a distinction without a difference. Thus, the Court cannot grant summary judgment on this score without more.

Both positions came with similar, but not identical, responsibilities. For example, it is undisputed that Ogborn in the new position took over some—but not all—of Burke's duties. On the other hand, it is undisputed that the two jobs were not exactly the same. According to a February 2009 job posting, the new position involved "advanced administrative duties" including "clerical and customer service functions." Lab Corp. did not provide the original job posting for Burke's position, so a comparison is difficult. However, based on testimony of what Burke actually did in the job, it is undisputed that she performed "administrative duties." It is unclear, however, what made the new administrative duties "advanced" and what made Burke's administrative duties—which included processing sales invoices and working with Access and

---

from high school. (Id.; Ogborn Dep. at 5.)

Excel computer programs—substantially less sophisticated. A jury could reasonably find Burke's duties to be just as advanced as Osborn's duties.

The new job required Ogborn to work on account set-ups, pricing requests, cross matchers, and connectivity requests. (Doc. 32-10.) However, Lab Corp. and its officials do not explain what a "cross match" or "connectivity request" entails or what skills a person must have to perform these requests. The Court cannot simply rely on the name of a task to infer its difficulty. Instead of processing "cross matches" or "connectivity requests," Burke processed hospital reports, verified monthly sales reports, handled subpoenas, processed Ceridian payroll for multiple managers, ran Compass and ACA reports, and worked with managed care and hospital representatives to do price comparisons. (Burke Dep. at 31-79.) In order to determine at summary judgment that no genuine issue of material fact remains about the positions being equivalent, the Court cannot simply compare the names of the tasks in two jobs. Lab Corp. may be correct: processing a "cross match" may not be similar to processing a "Ceridian payroll." Handling a "connectivity request"—whatever that means—may require more brainpower and many more hours of work than processing a Compass report. Or both jobs may basically be the same. Lab Corp. and Burke simply have not provided enough evidence for the Court to know for certain. Thus, a genuine issue of material fact remains for trial.

Finally, Lab Corp. argues that the two positions are not equivalent because Lab Corp. paid Ogborn approximately $2 more an hour than it paid Burke—although both jobs fell within the same pay grade. This disparity goes furthest to suggest that the jobs were not equivalent. A jury could reasonably infer that one position pays more because it requires more work and involves more responsibility. However, since the Court must draw every reasonable inference in

favor of the non-moving party, the Court is not convinced that this pay difference eliminates any genuine issue of material fact.

For one, Lab Corp. does not tell the Court whether Ogborn was paid the prevailing rate for the position or whether she received a higher rate of pay because of some personal qualification she possessed. Many jobs offer applicants a range of pay. One person might get paid slightly more for the same job because of some qualification—or because of market forces. Yet, in determining whether the positions are equivalent under the FMLA, the Court need not determine whether the employees who filled the positions were equivalent. The Court must evaluate the positions, not the people.

Moreover, the Court cannot determine whether a $2 per hour pay disparity makes the pay proportionally similar or vastly different in the context of pay for Lab Corp's administrative specialists. If all the company's administrative specialists earned, for example, between $16 and $20 per hour, depending on seniority and qualifications, then a $2 difference might not signify that the two positions are truly different. Lab Corp. has not provided the Court with the context it needs to evaluate this information. Moreover, the Court notes that both positions fell within the same pay grade. Since both positions fell in the same pay grade, a jury could reasonably conclude that the jobs were equivalent. By drawing every reasonable inference in the light most favorable to the non-moving party, as the Court must, the Court finds a genuine issue of material fact remains for trial.

*2. Administrative Assistant Position (Job Code 88843)*

One day after Burke's termination, Lab Corp. posted an administrative assistant position

17

in the distribution department. This position carried virtually the same title as Burke's job,[13] and, like Burke's old job, required a high school degree or equivalent. In addition, the position job description includes handling many of the same type of clerical and customer service functions, such as answering phone calls and printing reports, that Burke performed in her old position.[14] (Doc. 32-10.)

However, because the position paid a salary two grades lower than Burke's job (Doc. 40-6 ¶ 5), the jobs cannot be equivalent as a matter of law. Since the jobs were not in the same salary grade, the position did not have "virtually identical" pay. 29 C.F.R. § 825.215(a). Burke had no right to reinstatement to this position.

### *3. Project Specialist Position (Job Code 88690)*

The Court finds as a matter of law that the project specialist position was not equivalent to Burke's administrative specialist position. The two jobs are not equivalent because the jobs carried different titles and because the project specialist position paid a salary in a higher grade range. (Sumsion Decl. ¶ 18.) Thus, Burke had no right under the FMLA to reinstatement to this position.

### **CONCLUSION**

Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Partial

---

[13] The Court can see no meaningful difference between the title of an administrative assistant and an administrative specialist. The terms appear synonymous.

[14] Lab Corp. argues that the two jobs are different because the assistant in the distribution is responsible for maintaining equipment. However, Lab Corp. does not tell the Court whether the equipment requires specialized skill or whether it involves routine maintenance of a copy machine and coffee pot, which any assistant could handle. The Court cannot rely on conclusory statements in entering a summary judgment order.

Summary Judgment (Doc. 32) as to the FMLA claim is **DENIED**, and Defendant's cross motion for summary judgment (Doc. 35) as to the two age discrimination claims and the FMLA claim is also **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of October, 2009.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record